[892 NE2d 839, 862 NYS2d 446]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROMAN
BARET, Appellant.

Argued June 4, 2008; decided June 25, 2008

## POINTS OF COUNSEL

*Office of the Appellate Defender,* New York City (*Richard M. Greenberg* of counsel), for appellant. Where Roman Baret moved to withdraw his plea based on detailed sworn allegations that he was pressured and threatened into pleading guilty by his codefendant, who was offered and received a sentence of probation pursuant to a "no-split" plea offer, the court should have granted the motion or at least conducted a hearing. (*Boykin v Alabama,* 395 US 238; *People v Harris,* 61 NY2d 9; *People v Nixon,* 21 NY2d 338; *People v Pina,* 35 AD3d 45; *People v Richards,* 17 AD3d 136; *People v Caccavale,* 305 AD2d 695; *People v Stevens,* 298 AD2d 267; *People v Sung Min,* 249 AD2d 130; *People v Brown,* 205 AD2d 436; *People v Fanini,* 222 AD2d 1111.)

*Robert T. Johnson, District Attorney,* Bronx (*Dana Levin* and *Joseph N. Ferdenzi* of counsel), for respondent. The trial court properly exercised its discretion in denying defendant's motion to withdraw his guilty plea. (*People v Seaberg,* 74 NY2d 1; *People v Alexander,* 97 NY2d 482; *People v Fiumefreddo,* 82 NY2d 536; *People v Tinsley,* 35 NY2d 926; *People v Frederick,* 45 NY2d 520; *People v Harris,* 61 NY2d 9; *People v Young,* 194 AD2d 307, 82 NY2d 761; *People v Vellucci,* 13 NY2d 665; *People v White,* 309 NY 636, 352 US 849; *People v Dixon,* 29 NY2d 55.)

## OPINION OF THE COURT

Smith, J.

We hold that the courts below did not abuse their discretion in rejecting, without a hearing, the claim of defendant-appellant, Roman Baret, that his guilty plea was the result of threats made by his codefendant.

Baret and Reynardo Nunez were charged with sale of cocaine and possession of cocaine with intent to sell it. The People offered them a plea bargain under which Baret would plead guilty to one count of sale and Nunez to one count of attempted sale. Under the People's proposal, Baret would get a 2 to 6 year sentence, and Nunez would get probation. The deal was offered on a "no-split" basis: it was not available to either defendant unless both agreed to it. Both did, and their pleas were accepted after each told the court that no one had forced him to plead guilty.

Before being sentenced, Baret moved to withdraw his plea. In support of his motion, he submitted an affidavit, saying that he had initially rejected the deal when his lawyer told him about it. (Unlike our dissenting colleague [at 35 n], we think it clear from the record that Baret's lawyer was not also representing Nunez.) Baret's affidavit continued:

"Shortly thereafter, Mr. Nunez approached me and began to put pressure on me to plead guilty so that he could get Probation. . . .

"Mr. Nunez told me that 'I better do the right thing and plead guilty' or he would make sure he 'did the right thing.' He continually told me that his life was 'on the line' and that he would 'do what he had to do' if I didn't plead guilty. . . .

"Given these express and implied threats from Mr. Nunez, I felt in danger of physical reprisal if I did not plead guilty. . . .

"On December 23, 1996, I appeared in Part 38 with [my lawyer] and Mr. Nunez. I was feeling a great deal of pressure from Mr. Nunez. My attorney told me I had to make a decision to plead or go to trial on that date.

"Under such pressure, I agreed to plead guilty and accept a State prison sentence of two to six years. I was in shock during the plea proceeding and did not have a clear idea what I was doing."

Supreme Court denied Baret's motion without a hearing. The Appellate Division affirmed, with two Justices dissenting on the ground that a hearing should have been held (43 AD3d 648 [1st Dept 2007]). A Justice of the Appellate Division granted leave to appeal to this Court, and we now affirm.

When a defendant moves to withdraw a guilty plea, the "fact-finding procedures" to be followed "rest largely in the discretion of the Judge to whom the motion is made" (*People v Tinsley*, 35 NY2d 926, 927 [1974]). "Only in the rare instance will a defendant be entitled to an evidentiary hearing" (*id.*). Here, Supreme Court's exercise of discretion in denying Baret's motion without a hearing finds ample support in the record.

Baret's affidavit suggests, but does not unequivocally say, that he pleaded guilty only because he was afraid Nunez would

have killed or injured him if he did not. The affidavit does not say what basis, if any, Baret had for believing that Nunez was able to carry out this threat. And the threat itself, couched in ambiguous language, is presented without any specific context. The affidavit does not tell us when or where Nunez spoke to Baret, how often, or whether in person or on the telephone. Nor does the affidavit describe Baret's response. It uses such vague expressions as "[s]hortly thereafter," "continually," and "a great deal of pressure." One would expect a man who had in truth been threatened with violence, and found the threat credible enough that he would accept a 2 to 6 year prison term rather than defy it, to be able to tell his story in much more specific detail.

We have no basis for disturbing the conclusion of both courts below that Baret's showing of involuntariness was too flimsy to warrant further inquiry.

Accordingly, the order of the Appellate Division should be affirmed.

JONES, J. (dissenting). Because I think that connected pleas have an inherent tendency to coerce and, thus, deserve heightened scrutiny, I respectfully dissent.

At the core of the constitutional requirement that a guilty plea be entered voluntarily, knowingly and intelligently (*see People v Fiumefreddo*, 82 NY2d 536, 543 [1993]) is the additional, unremarkable requirement that there "be an affirmative showing on the record" that defendant waived his or her constitutional protections (*id.*). In my view, defendant's allegations of coercion—though not a model of specificity—under the circumstances sufficiently raised doubts about the voluntariness of his guilty plea such that, at a minimum, an uncumbersome evidentiary hearing was warranted.

This Court has long rejected "a formalistic approach to guilty pleas, preferring instead to leave the ascertainment" of the satisfactoriness of pleas "to the trial court's 'sound discretion exercised in cases on an individual basis' " (*id.*, quoting *People v Nixon*, 21 NY2d 338, 355 [1967]). However, on guilty plea withdrawal motions, defendants "should be afforded [a] *reasonable* opportunity to present [their] contentions and the court should be enabled to make an informed determination" (*id.* [citation and internal quotation marks omitted; emphasis added]). This principle applies with greater force in the context of connected pleas.

Here, defendant initially made it known to his first attorney that he wished to plead not guilty. The People then offered him and his codefendant a connected plea which would fail if either declined the offer. Prior to sentencing, and with new counsel, defendant moved to withdraw his previously entered plea. Defendant alleged, in a sworn affidavit, that not long after the plea offer was made, his codefendant "began to put pressure on me to plead guilty so that he could get Probation"; that defendant had "better do the right thing and plead guilty" or he (the codefendant) would make sure that defendant "did the right thing." Defendant stated that his codefendant "continually told [him] that his life was 'on the line' and that he would 'do what he had to do' if [defendant] didn't plead guilty." Given these threats, defendant stated that he "felt in danger of physical reprisal" were he to decline the plea offer.*

In my view, defendant's allegations were not facially incredible. As Justice Marlow in dissent below observed, it is unremarkable that defendant did not show fear or otherwise suggest that his plea was involuntary, or outright accuse his codefendant of physical threats since the latter was present at the allocution.

We must take care to ensure that a guilty plea is not induced by fraud or coercion. On their face, the plea allocution minutes indicate that defendant satisfied all constitutional requirements for a knowing, voluntary and intelligent plea (*see generally People v Nixon*, 21 NY2d 338 [1967]). The problem, however, is that in certain cases, sole reliance upon the allocution presumes too much about what has previously taken place (or not) off the record. While the majority correctly takes stock of this reality, it fails to go one step further to recognize that in some cases, a defendant—all sincerity and a good faith fear in the alleged threats of coercion notwithstanding—will simply not be in a position to

---

* Defendant additionally asserted that he and his codefendant were represented by the same counsel at the pleading stage, and that their mutual counsel also put pressure on him to accept the connected plea. The People countered that the defendants were, instead, represented by separate counsel. It is unclear from the record, however, which version is accurate. In any event, even if defendant was represented by separate counsel, defendant indicated that his attorney advised him that if he did not accept the plea, his codefendant would not receive the plea offer. Though obviously not exceedingly probative, it does provide some context (however marginal) for defendant's allegations.

provide the kinds of specific facts sufficient to warrant further inquiry that the majority here requires.

Absent the kind of specificity the majority demands, defendants who find themselves in such a predicament would never be heard to complain. Although specificity in allegations of coercion entails matters of degree, and each case must be evaluated on its own facts, where nothing else existed to call defendant's credibility into question, we should discourage courts from rendering summary determinations that risk depriving defendants of the opportunity, however brief, to make an uncomplicated case of coercion, outside codefendant's presence (*see People v Picciotti*, 4 NY2d 340, 344 [1958] ["The manner in which (a) statement (of coercion) . . . was made (if made at all), the circumstances surrounding its utterance, its impact upon the accused, . . . (and) whether reasonable, are matters to be considered and passed upon" at a hearing]).

The hearing court here decided defendant's motion without a hearing, on submission of his affidavit only. It is difficult to adequately evaluate defendant's allegations on paper when he has never been afforded the opportunity to stand before the court uninfluenced by his codefendant's presence. Moreover, the court's frame of reference, in evaluating defendant's submission without a hearing, is the allocution minutes; so it is no surprise that the hearing court, in its four-page written decision on the motion spent all but a single sentence to state, in summary form, that defendant "failed to substantiate his allegations of coercion." The rest is dedicated exclusively to the uncontested, *facial* adequacy of the allocution minutes. As Justice Marlow noted in dissent, the allegations, if true, portray a picture of "a defendant whose free will was beclouded by the coercive force of his codefendant's threats of future violence had defendant maintained his not guilty plea," and "of a desperate codefendant who would not stop at acts of violence[ ] to avoid going to prison" (43 AD3d 648, 652 [2007]). This would not be an unreasonable conclusion.

Lastly, I would simply note that although the plea is a vital instrument of judicial administration, a connected plea should not devolve into a situation whereby a defendant feels irretrievably ensnared by a previously entered guilty plea which, in retrospect, may have been at best ill-advised or, at worst, silenced at allocution by the very presence of a coercive agent. It should not be that only defendants with an intimate understanding of his or her codefendant's wherewithal to

make good on a promised threat of future harm should, in effect, receive the benefit of a closer look at alleged threats of coercion.

Accordingly, I would reverse and order a hearing.

Chief Judge KAYE and Judges CIPARICK, GRAFFEO, READ and PIGOTT concur with Judge SMITH; Judge JONES dissents and votes to reverse in a separate opinion.

Order affirmed.