People v Lantigua (2020 NY Slip Op 02557)





People v Lantigua


2020 NY Slip Op 02557


Decided on April 30, 2020


Appellate Division, First Department


Renwick, J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on April 30, 2020
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Dianne T. Renwick, J.P.
Barbara R. Kapnick
Angela M. Mazzarelli
Troy K. Webber, JJ.


10764 7466/98 

[*1]The People of the State of New York, Respondent,
v
Gustavo Lantigua, Defendant-Appellant.



Defendant appeals from an order of the Supreme Court, New York County (Gilbert C. Hong, J.), entered on or about March 27, 2017, which denied defendant's CPL 440.10 motion to vacate a judgment of conviction rendered November 5, 1998.




The Law Office of Andrew L. Friedman, New York (Andrew L. Friedman of counsel), for appellant.
Cyrus R. Vance, Jr., District Attorney, New York (Frank Glaser of counsel), for respondent.



RENWICK, J.P.


This appeal involves a summary denial, without a hearing, of a postjudgment, CPL 440.10 motion claiming ineffective assistance of counsel regarding a guilty plea that subjected defendant to mandatory deportation. We find that the trial court improperly denied the motion without a hearing pursuant to CPL 440.30(4)(d) (i) & (ii). This section permits a court to reach the merits of a postjudgment motion without a hearing to dismiss frivolous claims (see People v MacKenzie, 224 AD2d 173 [1st Dept 1996]). In the case at bar, however, as the dissent concedes, there is independent support for defendant's assertion that his plea was induced by erroneous advice given by his trial counsel, namely that his felony guilty plea would not subject defendant to mandatory deportation. Nevertheless, the dissent argues that summary denial of the CPL 440.10 motion is still proper, because defendant's allegations did not raise a reasonable possibility that he was prejudiced by the misadvice. We disagree. Like the court below, the dissent applies the wrong prejudice standard, by focusing exclusively on defendant's alleged lack [*2]of a viable defense and the likelihood he would have been convicted after trial, and disregards the particular circumstances of defendant's desire to remain in the United States. The dissent's reasoning is contradicted by the recent United States Supreme Court holding in Lee v United States (582 US __, 137 S Ct 1958, 1966 [2017]), which rejects any per se rule that prevents a defendant from establishing prejudice by an attorney's erroneous advice simply because the defendant may not have a strong defense. Instead, as Lee v United States mandates, even if the chance of success at trial is low, the prejudice inquiry should focus on the defendant's decision-making and whet her it was reasonable for one in defendant's position, facing mandatory deportation, to choose to take a shot a trial. Factual and Procedural Background
Defendant was arrested on August 4, 1998, and was charged with one count of criminal possession of a controlled substance in the third degree, a class B felony. The charge stemmed from a police officer's allegations that prior to defendant's arrest, the officer had observed several unapprehended individuals, each separately approaching defendant and handing him what appeared to be money. On each occasion, defendant and the unapprehended individual would enter a building. A few minutes later, defendant and the unapprehended individual would exit the building, with defendant then remaining outside the building and the unapprehended individual leaving the location. Eventually, the police officer apprehended defendant inside the building and recovered a tin of cocaine from defendant's person. A grand jury indicted defendant on September 25, 1998. After arraignment on the same day, defendant pleaded guilty to the charge of attempted criminal possession of a controlled substance in the third degree, a class C felony. On November 5, 1998, defendant received the promised sentence of five years probation. The plea to a class C drug felony subjected defendant to mandatory deportation (see Padilla v Kentucky, 559 US 356, 367-369 [2010], citing 8 USC § 1227[a][2][B][i]; see also People v McDonald, 1 NY3d 109, 113-115 [2003]; People v Mebuin, 158 AD3d 121, 126 [1st Dept 2017]; People v Doumbia, 153 AD3d 1139, 1140 [1st Dept 2017]).
On August 15, 2016, defendant moved in Supreme Court, New York County, to vacate the 1998 judgment of conviction pursuant to CPL 440.10, claiming a violation of the right to effective assistance of counsel as guaranteed by the United States and New York Constitutions (US Const Amend VI; NY Const art I, § 6). The crux of defendant's claim was that his trial counsel affirmatively misrepresented to him that there were no deportation consequences to his felony guilty plea and, in fact, advised him that he would not be deported if he pleaded guilty. Defendant supported his claim by, among other things, an unsworn but signed letter by his trial counsel, who admitted that, at the time of defendant's plea, he did not believe that a non-incarceratory sentence would trigger negative immigration consequences because a defendant would not be transferred to immigration custody at the conclusion of a defendant's sentence. Counsel added that at times he would proffer this advice to a defendant or refer a defendant to an immigration attorney. In support of his motion, defendant also included a copy of the transcript of the 1998 plea proceedings, which contained no advice by either defense counsel or the judge about the immigration consequences of the plea.
Finally, in support of his motion, defendant submitted a personal affidavit in which he asserted: At the time of his arrest, he was particularly concerned with the immigration consequences of the arrest; he made sure to ask his attorney about them; and, counsel told him that his guilty plea would not trigger any adverse immigration consequences. Further, defendant asserted that he pleaded guilty under the mistaken belief that, in the future, he would be eligible to become a lawful permanent resident of the United States. Defendant explained: "If my attorney had properly advised me concerning the definite nature of severe immigration consequences and the absence of any immigration discretion to allow me to legalize my status in the United States, I would not have pleaded guilty but instead would have proceeded to trial so [*3]that I could remain with [my] family." Defendant explained that his decision to go to trial in the face of permanent ineligibility for legalization of his immigration status would have been buttressed by the following facts:
"I faced only a limited period of incarceration if [defense counsel] lost at trial and I consequently would not have been intimidated in challenging the People's case. Prior to pleading guilty, my attorney explained to me that I would receive a sentence of either 1-3 or 2-6 years of incarceration for a first offense if I lost at trial. I ultimately decided to plead guilty because I did not want to be separated from my family for any length of time. However, if I was aware that my plea of guilty would inevitably ban me from ever securing legal status in this country, I would have fought to insure family unity and remain in the United States, especially since I only risked a relatively limited period of incarceration after trial. . . . At the time of my plea, my entire immediate family resided lawfully in the United States. Certainly, the presence of my family in the United States would have inspired me to fight my criminal case and prevent my inevitable permanent banishment from the United States and permanent ineligibility for legalization of status if I was properly informed of the severe immigration consequences surrounding my guilty plea."
Supreme Court summarily denied the motion without an evidentiary hearing, pursuant to CPL 440.30(4)(d), on the ground that defendant submitted unsupported allegations. Specifically, the court found that defendant's affidavit "provide[d] little or no objective, identifiable facts upon which [the] court [could] rely to find that [his counsel] affirmatively gave the defendant bad advice, or how [defendant] was prejudiced by that advice." The court noted that the letter from his counsel was not a sworn statement and did "not definitively state how [he] counseled this defendant." Additionally, the court concluded, "even if all statements regarding what advice was provided to the defendant are taken as facts, it is not clear that defendant would have been in any better position had he not relied on it." In that regard, the court noted that defendant had failed to "set forth any basis of a defense" or "mention what trial strategy he believe[d] could have successfully overcome the case against him" and had not asserted "any grounds to suppress any testimony or evidence against him." The court continued: "Instead, [defendant] relie[d] on general personal reasons why he would not have pled guilty to the instant charge since essentially, he had nothing to lose." A justice of this Court granted defendant leave to appeal. We now reverse. Discussion
A defendant has the right to the effective assistance of counsel before deciding whether to plead guilty (see US Const amend VI; NY Const, art I, § 6; Padilla v Kentucky, 559 US at 364). In Padilla, the United States Supreme Court held that constitutionally effective assistance of counsel requires defense counsel to advise a defendant whether a plea carries the risk of deportation (id. at 367-369; see People v Haffiz, 19 NY3d 883, 884 [2012]). Whether a defendant is entitled to relief on his claim will depend upon whether he can satisfy the prejudice prong of the Strickland v Washington test (466 US 668 [1984]; see Padilla, 559 US at 369; People v Hernandez, 22 NY3d 972, 975 [2013], cert denied 572 US 1070 [2014]). In the context of a guilty plea, a defendant must show that there was a reasonable probability that, but for counsel's error, he would not have pleaded guilty and would have insisted on going to trial (Lafler v Cooper, 566 US 156, 163 [2012]; Hill v Lockhart, 474 US 52, 59 [1985]; People v McDonald, 1 NY3d at 113-114).
Unlike the dissent, we find that the trial court erred in failing to conduct a hearing on defendant's motion. As indicated, the court relied on CPL 440.30(4)(d) in summarily denying [*4]defendant's postjudgment motion. That subsection permits denial of a CPL 440.10 motion without a hearing where "[a]n allegation of fact essential to support the motion . . . is made solely by the defendant and is unsupported by any other affidavit or evidence, and . . . under these and all other circumstances attending the case, there is no reasonable possibility that such allegation is true" (CPL 440.30(4)(d)(i) & (ii)). "This provision, which permits a trial court to reach the merits of a post-judgment motion without a hearing, is designed to weed out manufactured claims premised on nothing more than a defendant's self-serving affidavit" (People v MacKenzie, 224 AD2d at 173). But that is not the situation here.
First, as the dissent concedes, the trial court erred in finding that there is no reasonable possibility that defendant's allegations of misadvice  that counsel misadvised him about the immigration consequences of his plea -— are true. Defendant asserted that counsel misadvised him, and counsel's letter articulated that this was not only possible but probable. That the letter was not sworn is of no moment because we do not "always require [] an attorney affidavit on a motion under CPL 440.10" (People v Mebuin, 158 AD3d at 127 [The absence of an affidavit by counsel does not support the summary denial of the defendant's CPL 440.10 motion]). In the letter, counsel admitted that, at the time of the plea, he had a misconception about immigration consequences in a case like defendant's. Counsel further admitted that when a defendant inquired, he would either refer the defendant to an immigration lawyer, or convey the inaccurate information he possessed at the time to his client. Under these circumstances, we cannot say that there is no reasonable possibility that counsel misadvised defendant.
Second, we find that defendant's allegations are sufficient to warrant a hearing as to whether defendant was prejudiced by the attorney's misadvice. Initially, we reject the trial court's argument, adopted by the dissent, that there is no reasonable possibility that defendant's allegation is true, that he would not have pleaded guilty had he been aware that his plea subjected him to mandatory deportation. To reach its conclusion, the dissent relies entirely on the supposition that the People's case was strong and defendant had not demonstrated a viable defense. Specifically, the dissent points out:
"[D]efendant . . . relies on general personal reasons why he would not have pled guilty to the instant charge since essentially, he had nothing to lose . . . [D]efendant failed to set forth any basis of a defense or mention of what trial strategy he believed could have successfully overcome the case against him. . . . The record indicates that the cause against defendant was straightforward. . . . Consistent with his actual plea of guilty, defendant pointed to no reason for him to have believed he would not be found guilty. As noted by the motion court, defendant did not allege a defense he could have employed at a trial nor did he assert any grounds to suppress any testimony or evidence against him."
Insofar as the dissent, like the court below, refers to the strength of the People's case to suggest that a conviction was inevitable and therefore no prejudice existed, the dissent misconstrues the focus of the prejudice inquiry in cases involving guilty pleas. The dissent assumes that the likelihood of success at trial is the determinative factor for all defendants. However, the United States Supreme Court in Lee v United States (137 S Ct at 1958) expressly rejected any categorical rule whereby the prosecution could negate a defendant's prejudice claim by pointing out that a defendant had no viable trial defense or that the government had a particularly strong case against a defendant.
In doing so, the Supreme Court in Lee v United States drew an important distinction between ineffective assistance that occurs during a trial and ineffective assistance that occurs during plea negotiations (Lee, at 1964-1965). A claim of ineffective assistance of counsel will often involve a claim of attorney error "during the course of a legal proceeding," for example, [*5]that counsel failed to raise an objection at trial or failed to present an argument on appeal (id. at 1964 [internal quotation marks omitted], citing Roe v Flores-Ortega, 528 US 470, 481 [2000]). A defendant raising such a claim can demonstrate prejudice by showing " a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different'" (Flores-Ortega, 528 US at 482, quoting Strickland, 466 US at 694).
In contrast, a claim of ineffective assistance of counsel in plea negotiations, Lee v United States explained, amounts to an averment that counsel's " deficient performance arguably led not to a judicial proceeding of disputed reliability, but rather to the forfeiture of a proceeding itself'" (Lee, 137 S Ct at 1965, quoting Flores-Ortega, 528 US at 483). When a defendant alleges that his counsel's deficient performance led him to accept a guilty plea rather than go to trial, a court does not ask whether, had he gone to trial, the result of that trial would have been different than the result of the plea bargain (id.). "That is because, while we ordinarily apply a strong presumption of reliability to judicial proceedings, a court cannot accord' any such presumption to judicial proceedings that never took place" (Lee at 1965, quoting Flores-Ortega, 528 US at 482-483). A court should instead consider whether a defendant would not have pleaded guilty if he had been correctly advised of the deportation consequences of the plea. Thus, the focus remains on the defendant's decision-making, which necessarily requires a full development of all the pertinent facts (Lee, at 1965-1967 [prejudice inquiry "demands a case-by-case examination' of the totality of the evidence"], quoting Williams v Taylor, 529 US 362, 391 [2000]; see also People v Gaston, 163 AD3d 442 [1st Dept 2018]; People v Samuels, 143 AD3d 401 [1st Dept 2016] [credibility of the defendant's Padilla and McDonald claims should be determined only after a hearing]; People v Picca, 97 AD3d 170 [2nd Dept 2012] [same]).
Of course, Lee v United States did not hold that the likelihood of conviction at trial is irrelevant to prejudice. On the contrary, the Supreme Court specifically held that a defendant's trial prospects must be considered as part of the totality of the evidence regarding the decision to accept a guilty plea (Lee, at 1966-1967). More importantly, because Lee operates under the reasonable assumption that for some defendants deportation could be functionally as severe as imprisonment, an ineffective assistance of counsel claim regarding a plea may succeed even where the likely outcome of a favorable trial is slim to none (Lee v United States, 137 S Ct at 1966-1967 ["[When] the respective consequences of a conviction after trial and by plea . . . are . . . similarly dire, even the smallest chance of success at trial may look attractive"]).
Ultimately, what the dissent overlooks is that the prejudice standard "does not require a defendant to show that going to trial would have been the best objective strategy or even an attractive option" (United States v Swaby, 855 F3d 233, 243-244 [4th Cir 2017]). "It merely requires the defendant to show a reasonable likelihood that a person in the defendant's shoes would have chosen to go to trial. The decision does not need to be optimal and does not need to ensure acquittal; it only needs to be rational" (id. at 244).
Applying the mandates of Lee v United States to the instant claim of prejudice, defendant's allegations are more than minimally sufficient to warrant an evidentiary hearing. In his affidavit in support of the postjudgment motion, defendant stated that had counsel properly advised him concerning the mandatory consequences of the plea, he would not have pleaded guilty but instead would have proceeded to trial [FN1]. Defendant explained with sufficient [*6]evidentiary detail why avoiding deportation was important to him: His desire to remain with his immediate family required him to remain in the United States. Further, the unique plea calculus for defendant included his understanding that if convicted at trial, he most likely faced a relatively short period of incarceration as a first felony offender. In light of these circumstances, there is a question of fact as to whether it is reasonably probable that had counsel properly advised him, defendant would not have pleaded guilty and instead would have gone to trial (see People v Abdallah, 153 AD3d 1424 [2d Dept 2017]; People v Roberts, 143 AD3d 843 [2d Dept 2016]).
To be sure, I do recognize that factors such as the length of time defendant had been present in this country and his ties to his country of origin, which are absent from the record, are important to evaluating whether there is a reasonable probability that defendant was prejudiced by the misadvice (see People v Alvarracin, 148 AD3d 1041, 1042 [2d Dept 2017], lv denied 29 NY3d 1075 [2017]). However, the question now is whether defendant has made sufficient allegations to warrant an evidentiary hearing, not whether defendant has satisfied his burden of proof (see People v Mebuin, 158 AD3d at 121; People v Samuels, 143 AD3d at 401; People v Picca, 97 AD3d at 170).
Still, the dissent speculates "[t]hat defendant would have risked years in prison as opposed to accepting a probationary sentence is all the more unlikely given that defendant was not deported in the 18 years between his [guilty plea] and his motion to vacate [his] conviction." Again, what the dissent overlooks is that the appropriate inquiry on the issue of prejudice is limited to the defendant's circumstances as they were at the time of entry of the guilty plea (see Roe v Florez-Ortega, 528 US at 480). Thus, that defendant was not deported in the 18 years between his guilty plea and his motion to vacate his conviction is of no moment, since such future event played no part in defendant deciding whether to plead guilty years earlier (see People v Martinez, 180 AD3d 190 [1st Dept 2020] [trial court improperly found lack of prejudice based on the defendant's explanation on what motivated him to find out about the immigration consequences of his guilty plea, because the appropriate inquiry on the issue of prejudice should have been limited to his circumstances as they were at the time of the guilty plea]).
In sum, under the particular circumstances here, a proper determination of the CPL 440.10 motion to vacate the judgment called for factual findings as to whether the alleged misadvice was indeed given and whether it is reasonably probable that had counsel properly advised him, defendant would not have pleaded guilty and instead would have gone to trial. In as much as those essential facts were in dispute, the CPL 440.10 motion was not susceptible to a decision without first conducting a hearing (Lee v United States, 137 S Ct at 1966-1967; see People v Mebuin, 158 AD3d at 121; People v Samuels, 143 AD3d at 401; People v Picca, 97 AD3d at 170).
Accordingly, the order of the Supreme Court, New York County (Gilbert C. Hong, J.), entered on or about March 27, 2017, which denied defendant's CPL 440.10 motion to vacate a judgment of conviction rendered November 5, 1998, should be reversed, on the law, and the matter remanded for a hearing on defendant's claim of ineffective assistance of counsel and prejudice by such misadvice, and for a decision de novo on the motion.
All concur except Webber, J. who dissents in an Opinion.




WEBBER, J.(dissenting)


I would affirm Supreme Court's denial of defendant's CPL 440.10 motion to vacate his 1998 judgment of conviction.
Some 18 years after his conviction by plea to attempted criminal possession of a controlled substance in the third degree, defendant moves pursuant to CPL 440.10 to vacate the plea. Defendant now claims that his attorney rendered ineffective assistance of counsel because the attorney affirmatively misadvised him that his guilty plea would not trigger adverse immigration consequences. Defendant argues that the attorney's representation "fell far below an objective standard of reasonableness" and that, but for the misadvice, he would have proceeded to trial on the drug possession charge.
In support of his motion, defendant submitted a self-serving personal affidavit in which he asserted that at the time of his arrest, he was particularly concerned with the immigration consequences of the arrest, that he made sure to ask his attorney about the immigration consequences, and that his attorney told him that his guilty plea would not trigger any adverse immigration consequences. According to the affidavit, defendant pled guilty under the mistaken belief that, in the future, he would be eligible to become a lawful permanent resident of the United States. Defendant asserted that his attorney told him that a conviction after trial would likely have resulted in a prison sentence of one to three years, the minimum legal sentence, or perhaps two to six years. In his affidavit, defendant repeatedly stated that he would not have pled guilty had he known that doing so would result in his being automatically deported and permanently separated from his entire immediate family.
Defendant asserted that he did not learn until "years later," when he consulted an immigration attorney, that his attorney had misinformed him and that his conviction "subjected me to deportation" and barred him from ever obtaining lawful permanent residence status. Defendant does not state why he waited 18 years to move to vacate his plea. He does not state exactly when he learned of the misinformation, and/or what prompted him to consult with an immigration attorney.
Annexed to defendant's motion was an unsworn, May 2016 letter from defendant's attorney to the court. In the letter, the attorney stated that he had "been made aware" that he represented defendant in the instant case, however, he did not remember having any "immigration discussions" with defendant, and "certainly [could] not confirm" the allegations in defendant's postjudgment motion. The attorney stated that, in 1998, he "did not believe that a non-incarceration sentence would trigger negative immigration consequences because [a] defendant would not be automatically transferred to immigration custody at the conclusion of his sentence." Rather, he "believed that a defendant sentenced to incarceration would suffer immigration consequences because immigration could easily pick him up from his penal institution at the conclusion of his sentence." The attorney further stated: "[t]here were times when criminal defendants would inquire about immigration consequences and I either referred them to an immigration attorney or reiterated what little knowledge I had at the time."
There is no dispute that as Padilla v Kentucky (559 US 356 [2010]), was not retroactive to cases prior to 2010 (see Chaidez v United States (568 US 342 [2013]), when defendant pled guilty in 1998, his attorney was not obligated to inform him that the plea might have adverse immigration consequences. Thus, to prevail on an ineffective assistance of counsel claim based on his attorney's advice regarding such consequences, defendant must show (1) that his attorney made an affirmative misstatement regarding the immigration consequences of defendant's plea and (2) that there was a reasonable probability that defendant would not have pleaded guilty but for that misadvice (see People v McDonald, 1 NY3d 109, 114-115 [2003]). In my opinion, defendant failed to make such a showing.
While I agree with the majority that it cannot be fairly concluded that "there is no reasonable possibility" that defendant's attorney misadvised defendant, I do not agree that defendant made a sufficient showing that he would not have pled guilty if accurately informed of the immigration consequences. This Court has consistently held that a defendant's motion [*7]papers must sufficiently allege that his attorney's performance fell below an objective standard of reasonableness and that he was prejudiced by the deficient performance (People v Mebuin, 158 AD3d 121 [1st Dept 2017] [the defendant sufficiently alleged that he was prejudiced by counsel's incorrect advice, his allegations were corroborated by other parts of record]; People v Samuels, 143 AD3d 401 [1st Dept 2016] [the motion court erred in finding that the defendant's claim was not "credible," given the length of time the defendant resided legally in the United States, and the other factors raised in his motion papers]; People v Rosario, 132 AD3d 454 [1st Dept 2015] [the defendant made a sufficient showing to warrant a hearing; his claim was corroborated by the plea and sentencing minutes, including the attorney's statements to the court]).
Contrary to the majority's arguments, the Supreme Court's analysis in Lee v United States (582 US __, 137 S Ct 1958, 1966 [2017]) does not support a different result. In Lee, the Court found that the defendant demonstrated a reasonable probability that he would not have pled guilty if he had known that it would lead to mandatory deportation. Specifically, the Court held that Lee had provided "substantial and uncontroverted evidence" (id. at 1969) establishing that he would not have accepted a plea had he known it would lead to deportation. Lee asserted that "[he] had lived in the United States for nearly three decades, had established two businesses in Tennessee, and was the only family member in the United States who could care for his elderly parents" (id. at 1968). The Court further noted that both Lee and his attorney testified that "deportation was the determinative issue" to Lee; his responses during his plea colloquy confirmed the importance he placed on deportation; and he had strong connections to the United States, while he had no ties to South Korea (id. at 1963 [internal quotation marks omitted]).
Here, defendant has made no such showing. Rather, he relies on general personal reasons why he would not have pled guilty to the instant charge since essentially, he had nothing to lose. Further, defendant failed to set forth any basis of a defense or mention of what trial strategy he believed could have successfully overcome the case against him (see People v McDonald, 296 AD2d 13, 20 [3d Dept 2002], affd 1 NY3d 109 [2003]). The record indicates that the case against defendant was straightforward. Defendant was observed engaging in three separate drug sales and was found in possession of cocaine. Consistent with his actual guilty plea, defendant pointed to no reason for him to have believed he would not be found guilty. As noted by the motion court, defendant did not allege a defense he could have employed at a trial nor did he assert any grounds to suppress any testimony or evidence against him.
The majority states that "even if the chance of success at trial is low, the prejudice inquiry should focus on the defendant's decision-making and whether it was reasonable for one in defendant's position, facing mandatory deportation, to choose to take a shot at trial." The majority concedes however, that the chance of success at trial is a determinating factor. Here, defendant failed to show that given the evidence of his commission of the crime charged, there was a reasonable likelihood that he would have proceeded to trial; that a trial would have been optimal or strategically plausible or even that it would have been rational to do so (see United States v Swaby, 855 F3d 233, 243 [4th Cir 2017]). That defendant would have risked years in prison as opposed to accepting a probationary sentence is all the more unlikely given that defendant was not deported in the 18 years between his plea of guilty and his motion to vacate the judgment of conviction.
Order, Supreme Court, New York County (Gilbert C. Hong, J.), entered on or about March 27, 2017, reversed, on the law, and the matter remanded for a hearing on defendant's claim of ineffective assistance of counsel and prejudice by such misadvice, and for a decision de novo on the motion.
Opinion by Renwick, J.P. All concur except Webber, J. who dissents in an Opinion.
Renwick, J.P., Mazzarelli, Kapnick, Webber, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: APRIL 30, 2020
CLERK



Footnotes

Footnote 1:The dissent characterizes the statements contained in defendant's affidavit as "self-serving," a characterization that adds nothing to the analysis of whether he was entitled to a hearing on his CPL 440.10 motion, claiming ineffective assistance of counsel; any affidavit a party submits in support of his or her position can be so characterized.