People v Mower (2025 NY Slip Op 05851)

People v Mower

2025 NY Slip Op 05851

Decided on October 23, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:October 23, 2025

CR-24-0792
[*1]The People of the State of New York, Respondent,
v
Gordon M. Mower Jr., Appellant.

Calendar Date:September 9, 2025

Before:Garry, P.J., Aarons, Fisher, McShan and Mackey, JJ.

Paul J. Connolly, Delmar, for appellant.
Letitia James, Attorney General, New York City (Robert C. McIver of counsel), for respondent.

McShan, J.
Appeal, by permission, from an order of the County Court of Otsego County (John Lambert, J.), entered April 26, 2024, which denied defendant's motion pursuant to CPL 440.10 to vacate the judgment convicting him of the crime of murder in the first degree, without a hearing.
Defendant shot and killed his parents on their farm in March 1996 and was thereafter charged by indictment with murder in the first degree (two counts) and murder in the second degree (two counts). At the time, this state allowed the death penalty; but at the time of plea negotiations, the People [FN1] had not filed their notice of intent to seek a sentence of death (see CPL 250.40 [1], [2]).[FN2] Defendant agreed to plead guilty during a one-week extension of the People's time to file notice of their intent to seek a sentence of death. He later pleaded guilty to one count of murder in the first degree, which came with a promise that the People would recommend a prison term of life imprisonment without parole to Supreme Court (Coccoma, J.). The court thereafter sentenced defendant in accordance with the People's recommendation.
Two years later, the Court of Appeals declared two sections of New York's death penalty statute to be unconstitutional — CPL 220.10 (5) (e) and 220.30 (3) (b) (vii) (see Matter of Hynes v Tomei, 92 NY2d 613, 623 [1998], cert denied 527 US 1015 [1999]). Meanwhile, defendant appealed the judgment of conviction to this Court, arguing, among other things, that his guilty plea was based on a mistake of law (280 AD2d 25, 27 [3d Dept 2001], affd 97 NY2d 239 [2002]). While his appeal to this Court was pending, he filed a CPL article 440 motion in 1999, arguing that his plea was involuntary due to the mistake of law; Supreme Court denied the motion under CPL 440.10 (2) (b) because the argument could be made on the then-pending direct appeal. Defendant appealed that determination and, after consolidating both appeals, this Court affirmed both the judgment of conviction and the denial of the CPL article 440 motion (id. at 27-30).
Over two decades later, in October 2023, defendant filed the present CPL article 440 motion, alleging that he is entitled to vacatur of his plea because he was denied the effective assistance of counsel in deciding whether to plead guilty, and his plea was not knowingly, intelligently and voluntarily entered. In support of that assertion, defendant alleged two separate but intertwined bases; first, that his trial attorneys had mistakenly advised him during plea negotiations that, if he pleaded guilty to the murder in the first degree count, he was not likely to spend his life in prison, as the death penalty statute would soon be held to be unconstitutional, and he would, as a result, be resentenced to a punishment less than the sentence of life imprisonment without parole and, second, that his cousin had promised him — and provided — a payment of $10,000 to plead guilty and renounce his claim to his parents' estates. County Court (Lambert, J.) denied [*2]the motion without a hearing, holding that defendant's trial attorneys provided defendant with meaningful representation, citing their ability to obtain a favorable plea for him, among other things. The court also noted that the motion was procedurally barred because defendant could have raised these grounds in his prior CPL article 440 motion and that he had failed to support his motion with an affirmation from trial counsel. Defendant appeals, by permission.
"At any time after the entry of a judgment, the court in which it was entered may, upon motion of the defendant, vacate such judgment upon the ground that . . . [it] was obtained in violation of a right of the defendant under the constitution of this state or of the United States" (CPL 440.10 [1] [h]). "[T]he court must consider the [evidence that the parties submitted to the court] . . . for the purpose of ascertaining whether the motion is determinable without a hearing to resolve questions of fact" (CPL 440.30 [1] [a]). The necessity of a hearing turns on whether defendant's submissions demonstrate that "the nonrecord facts sought to be established are material and would entitle the defendant to relief" (People v Buckley, 206 AD3d 1470, 1471 [3d Dept 2022] [internal quotation marks and citations omitted]). Although County Court's determination as to defendant's entitlement to a hearing "is subject to appellate review for an abuse of discretion" (People v Carota, 235 AD3d 1069, 1071 [3d Dept 2025] [internal quotation marks, brackets and citation omitted], lv denied 43 NY3d 962 [2025]), we possess the "broad authority to substitute our discretion for that of County Court" (People v Phelps, 236 AD3d 1194, 1198 [3d Dept 2025]; see People v Washington, 71 NY2d 916, 918 [1988]).
Initially, although County Court had the discretionary authority to summarily deny defendant's motion on various procedural grounds, we find it appropriate to substitute our discretion and disregard these procedural bars for dismissal. Specifically, the People contend that "defendant was in a position adequately to raise the ground or issue underlying the present motion but did not do so" (CPL 440.10 [3] [c]). However, the prior CPL article 440 motion was made while defendant's direct appeal was pending and raised a record-based contention that was considered on the consolidated appeal (see 280 AD2d at 27). Moreover, defendant's counsel on the present motion further affirmed that, despite various attempts to reach out, he was unsuccessful in contacting prior motion counsel to confirm that she had discussed the motion with defendant prior to submitting it. Under these circumstances, we find that this discretionary procedural bar should be disregarded (see People v Reed, 159 AD3d 1551, 1552 [4th Dept 2018]; People v Pett, 148 AD3d 1524, 1524 [4th Dept 2017]; People v Hamilton, 115 AD3d 12, 28 [2d Dept 2014]).
For similar reasons, we find that defendant's failure to support his motion with an affirmation from trial counsel [*3]can be excused (see CPL 440.30 [4] [d]; see generally People v Wright, 27 NY3d 516, 522 [2016]; People v Dorvil, 234 AD3d 1106, 1118 [3d Dept 2025], lv denied 44 NY3d 982 [2025]; People v Hooker, 230 AD3d 1465, 1469 [3d Dept 2024]; People v Podeswa, 205 AD3d 1139, 1141 [3d Dept 2022], lv denied 38 NY3d 1135 [2022]). The affirmation from motion counsel and the affidavit from defendant's investigator reflect meaningful efforts to obtain an affirmation from trial counsel in support of defendant's motion. Defendant's investigator had initially spoken with trial counsel and the present motion is based, in part, upon trial counsel's representations during that recorded discussion. However, when motion counsel reached out to trial counsel with a draft affirmation to be submitted in support of the underlying motion, while initially expressing some disagreement with certain representations in the draft, trial counsel became entirely unresponsive to any requests for feedback or other attempts to communicate. These circumstances provide a reasonable excuse for defendant's failure to obtain that affirmation (see People v Wright, 27 NY3d at 522; see also People v Pinto, 133 AD3d 787, 790 [2d Dept 2015], lv denied 27 NY3d 1004 [2016]; see generally People v Dunham, 231 AD3d 1437, 1439 n 1 [3d Dept 2024], lv denied 43 NY3d 963 [2025]).
As to the merits, in support of his motion, defendant affirmed that at various points during the plea negotiation process, trial counsel and other attorneys in the office that was appointed to represent him had misadvised him that, were he to plead guilty, his sentence would be reduced to something other than the sentence of life imprisonment without parole based upon the likelihood that the death penalty would be struck down, in some form or another. Defendant's motion counsel and his investigator supplemented defendant's account by recounting their discussions with trial counsel, who provided some indication that such advice was given to defendant over the course of his plea negotiations. Ultimately, that purported advice would prove to be inaccurate, as the provisions of the death penalty that were struck down had no effect on defendant's plea, which he entered into while no death notice was pending (see Matter of Hynes v Tomei, 92 NY2d at 623 n 3; see also People v Mower, 97 NY2d 239, 245 [2002]; see generally Brady v United States, 397 US 742, 755 [1970]; United States v Jackson, 390 US 570, 582 [1968]). Further, both defendant's account in his affidavit, as well as the information garnered by his investigator and motion counsel from their interview and discussions with trial counsel, reflect that such advice played a role in overcoming defendant's hesitancy to plead guilty to a life sentence without parole (see People v Phelps, 236 AD3d at 1197-1198; see also People v Clark, 142 AD3d 723, 724-725 [3d Dept 2016], lv denied 28 NY3d 1026 [2016]).
As to the $10,000 payment from defendant's cousin that was purportedly conditioned [*4]on his guilty plea and renunciation of his claim to his parents' estates, defendant's affidavit represented that, during the period of time that he was considering the plea offer that he ultimately accepted, the payment heavily factored into his ultimate decision. According to defendant, after he had received the offer of payment, he remained reticent to accept the plea offer; however, by his telling, consideration of that payment together with his averment as to trial counsel's misadvice of a potential reduced sentence ultimately persuaded him to accept the offer to plead guilty and be sentenced to life without parole. In support of that account, motion counsel and defendant's investigator recounted trial counsel's representation that defendant's initial objection to accepting the plea offer diminished once the $10,000 payment had been offered. In support of defendant's motion, he presented further evidence that $10,000 was paid to him after he entered his plea by way of two separate $5,000 checks, one of which was provided by his cousin. The evidence of that payment and the corresponding account that it influenced defendant's deliberations as to whether to accept the plea, considered alongside the misadvice that he was purportedly provided, create an issue of fact as to whether he was subjected to something more "than the type of situational coercion faced by many defendants who are offered a plea deal" (People v Hatcher, 211 AD3d 1236, 1238 [3d Dept 2022] [internal quotation marks and citations omitted], lv denied 39 NY3d 1078 [2023]; accord People v Rose, 238 AD3d 1323, 1325 [3d Dept 2025], lv denied 44 NY3d 984 [2025]; compare People v Baret, 11 NY3d 31, 33-34 [2008]).
All told, we find that defendant's submissions in support of his motion are sufficient to raise an issue of fact warranting a hearing with respect to deficiencies in his representation (see People v Guzman-Caba, 214 AD3d 564, 565 [1st Dept 2023]; People v Sposito, 140 AD3d 1308, 1312 [3d Dept 2016], affd 30 NY3d 1110 [2018]) and the effect on the voluntariness of his plea (see People v Rouse, 126 AD3d 1227, 1228 [3d Dept 2015]; see also People v Thomson, 279 AD2d 644, 645 [3d Dept 2001]). We therefore exercise our broad discretionary authority to reverse County Court's determination and grant defendant a hearing on the issues raised in his CPL 440.10 (1) (h) motion, as the "facts surrounding [his] claim[s] need to be further developed" (People v Diallo, 113 AD3d 199, 201 [3d Dept 2013]; see CPL 440.10 [2] [b]; 440.30 [5]; see also People v Phelps, 236 AD3d at 1198).[FN3] With respect to both his claims, defendant bears the burden of establishing his entitlement to relief by a preponderance of the evidence (see CPL 440.30 [6]). As to his contention of deficient representation, defendant will bear the burden of proving that he was misadvised about the potential to have his sentence reduced in the future if he took the People's plea offer and, but for that misadvice, there is a reasonable [*5]probability that he would have chosen to proceed to trial (see People v Phelps, 236 AD3d at 1198; People v Lantigua, 184 AD3d 80, 87 [1st Dept 2020]; People v Diallo, 113 AD3d at 202). Although there are outstanding questions as to defendant's inclination to proceed on that path considering the viability of any defenses he might have raised as well as a potential death sentence looming, at this juncture the question "is whether defendant has made sufficient allegations to warrant an evidentiary hearing, not whether defendant has satisfied his burden of proof" (People v Lantigua, 184 AD3d at 89).[FN4] The parties remaining contentions, to the extent not addressed, have been considered and found unavailing.
Garry, P.J., Aarons, Fisher and Mackey, JJ., concur.
ORDERED that the order is reversed, as a matter of discretion in the interest of justice, and matter remitted to the County Court of Otsego County for further proceedings not inconsistent with this Court's decision.

Footnotes

Footnote 1: Pursuant to an executive order, former Governor George E. Pataki designated the Attorney General's office as the prosecuting agency (see Executive Order [Pataki] No. 42 [9 NYCRR 5.42]).
Footnote 2: At the time, the death penalty statute only permitted a sentence of death after trial (see Matter of Hynes v Tomei, 92 NY2d 613, 623 [1998], cert denied 527 US 1015 [1999]).
Footnote 3: In considering the merits of defendant's motion, County Court noted that defendant's allegations were contradicted by his statements during his plea colloquy that he was not coerced into entering his guilty plea and that he was satisfied with his counsel's representation. However, in light of the proof submitted raising issues of fact with respect to his representation and the payment offered, "it cannot be said that [those representations] alone [are] sufficient, in view of all the attendant circumstances, to support a finding that there is 'no reasonable possibility' that defendant's claims are true" (People v Shields, 205 AD2d 833, 835 [3d Dept 1994], quoting CPL 440.30 [4] [d]).
Footnote 4: To that end, although the People note the length of time that has passed since defendant's conviction until now, that fact can fairly be considered in assessing the credibility of his claims (see People v Newsom, 227 AD3d 508, 509 [1st Dept 2024], lv denied 42 NY3d 939 [2024]). As to the People's contention that defendant's motion is improperly supported by hearsay, we find that said hearsay does not form the sole basis of the affidavits and affirmation submitted in support of the motion, and that the submissions as a whole adequately establish the existence of factual issues warranting a hearing (see People v Beckingham, 116 AD3d 1298, 1301 [3d Dept 2014]; People v Davey, 91 AD3d 1033, 1034 [3d Dept 2012]; compare People v Bailey, 232 AD3d 1031, 1037 [3d Dept 2024], lv denied 43 NY3d 929 [2025]).