People v Ouderkirk (2025 NY Slip Op 06925)

People v Ouderkirk

2025 NY Slip Op 06925

Decided on December 11, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:December 11, 2025

113289
[*1]The People of the State of New York, Respondent,
v
Jennifer Ouderkirk, Appellant.

Calendar Date:October 8, 2025

Before:Clark, J.P., Aarons, Pritzker, Reynolds Fitzgerald and McShan, JJ.

John A. Cirando, Syracuse, for appellant.
Matthew Van Houten, District Attorney, Ithaca (Andrew J. Bonavia of counsel), for respondent.

Pritzker, J.
Appeal from a judgment of the County Court of Tompkins County (Joseph Cassidy, J.), rendered October 8, 2021, convicting defendant upon her plea of guilty of the crimes of aggravated unlicensed operation of a motor vehicle in the first degree, driving while ability impaired by drugs and driving while ability impaired by the combined influence of drugs.
In 2018, defendant was charged by indictment with two counts of aggravated unlicensed operation of a motor vehicle in the first degree (counts 1 and 2) and one count each of driving while ability impaired by drugs (count 3) and driving while ability impaired by the combined influence of drugs (count 4). The charges followed an accident in July 2018 where defendant drove her motor vehicle off a roadway and ended up sideways in a ditch.[FN1] In her omnibus motion, defendant moved to, among other things, suppress statements she made to law enforcement.[FN2] After a four-day suppression hearing, County Court denied defendant's requested suppression relief.
Prior to trial, defendant filed a motion to dismiss the indictment pursuant to CPL 30.30 and CPL former article 240 (repealed by L 2019, ch 59, § 1). The motion was scheduled for oral argument, but after defendant failed to appear on two consecutive days, a bench warrant was issued. A few weeks later, defendant was arrested and appeared in County Court without counsel; the People requested bail and the matter was adjourned until the next day so that defendant would have counsel present. The following day, a bail hearing was requested and scheduled, however, defendant's counsel indicated that defendant was considering the People's plea offer of a maximum sentence of five years of probation should defendant plead guilty to the three remaining charges. After a recess for defendant to consider the offer, she pleaded guilty and, after doing so, the People agreed to modify their bail request to release on recognizance. Defendant subsequently moved to withdraw her plea of guilty pursuant to CPL 220.60, which the court denied without a hearing. Pursuant to the plea agreement, the court sentenced defendant to five years of probation for the conviction on count 1, a conditional discharge on count 3 and a concurrent probation term of three years on count 4. Defendant appeals.
Defendant argues that County Court erred in declining her request to suppress statements she made to Brandon Eckes-Conway, a state trooper, including her refusal to submit to a chemical drug test, because her statements were not voluntary due to a head injury she sustained during the accident and for which she was denied appropriate medical care. "The People bear the burden of proving, beyond a reasonable doubt, that a defendant's statements are voluntary" (People v McCarty, 221 AD3d 1360, 1364 [3d Dept 2023] [internal quotation marks and citations omitted], lv denied 40 NY3d 1093 [2024]). "Determining whether a statement is voluntary is a factual issue governed by the totality of the circumstances [*2]and the credibility assessments of the suppression court in making that determination are entitled to deference" (People v Weber, 226 AD3d 1158, 1160 [3d Dept 2024] [internal quotation marks and citations omitted], lv denied 42 NY3d 931 [2024]; accord People v Logan, 198 AD3d 1181, 1184 [3d Dept 2021], lv denied 37 NY3d 1162 [2022]).
Eckes-Conway testified that he arrived at the scene of the accident at approximately 3:55 p.m., just a minute after the call regarding the accident went out over dispatch. Upon arrival, he observed a car laying on its side in a ditch and defendant standing inside of the vehicle picking things up off the ground. After directing defendant to get out of her vehicle, she climbed out of the passenger side window, holding her purse, without shoes on and looking disheveled. Eckes-Conway observed defendant then place her open purse on the ground and saw that there "were several prescription pill bottles visible . . . and a box of Miracle-Gro." He asked defendant what occurred, and she replied that "she was on the way home, she just had snorted [two pills of] Ambien, and she ended up in the ditch." According to Eckes-Conway, defendant also stated that "she snorted [the Ambien] because it worked faster." He described defendant as having poor motor control and that her eyelids were droopy, as if she was falling asleep while standing up. He observed a slight abrasion on her arm, but no other visible injuries nor did defendant complain of any. Nonetheless, he requested that emergency medical services personnel evaluate her, but she refused to be examined. Believing that she was under the influence of some type of drug or alcohol, he then performed field sobriety tests. After providing defendant with instructions, she performed three field sobriety tests, all of which indicated impairment. A preliminary breath test was also administered and indicated that there was no alcohol in defendant's system.
After the field sobriety tests, Eckes-Conway arrested defendant. Subsequently, he read drug testing refusal warnings and Miranda rights from a State Police issued card to defendant. Eckes-Conway testified that defendant responded "no" when he asked whether she would submit to a chemical test for drugs. He clarified that based on his training and experience, he believed that defendant was impaired by drugs rather than alcohol consumption. He testified that he read the drug testing refusal warnings to defendant two more times and that, after the third warning, defendant agreed to submit a breath sample. Eckes-Conway testified that while he was driving defendant back to the State Police barracks, without any prompting questions from him, she "stated that she took three Ambien at one time and she didn't believe it would hit her that hard." He testified that defendant never made mention of any head pain or injuries nor did he observe any evidence at the scene that would indicate defendant had suffered a head injury during the accident. He clarified [*3]that after he administered Miranda warnings, defendant responded "no, I already told you I took Ambien." During cross-examination, Eckes-Conway testified that while at the scene of the accident, defendant stated that she had not slept for two days and the reason she was on the road was to pick up her prescription. He also testified that, while at the barracks, she was on the phone with someone and said "I guess they don't understand a medical emergency."
Catherine Rounds, a state trooper, testified that she has special training in "Advanced Roadside Impaired Driving Enforcement" and is a certified Drug Recognition Expert (hereinafter DRE) and that on the day of the accident, she responded to a request for a DRE at the State Police barracks in the City of Ithaca, Tompkins County. When she arrived at approximately 5:30 p.m., she described that defendant appeared drowsy and was yelling back and forth with Eckes-Conway about "why he was charging her with the worst offense." After talking to Eckes-Conway, Rounds began the 12-step DRE evaluation of defendant. She asked defendant several preliminary medical questions, inquiring if she was sick or injured, taking medications or drugs, if she was under the care of a doctor or dentist, if she has eaten, slept, what time it was and if she had any physical defects. She testified that when she initially asked defendant if she had any physical defects, she responded "no," but later in the evaluation defendant said she had nerve damage in her legs. Rounds stated that after these preliminary questions, defendant's phone began to ring and when defendant asked who it was, the cell phone screen indicated "Chris." During defendant's phone conversation, she said "I picked up an Ambien and popped it in and I don't know what happened. I must have missed a turn or something" and "I guess they don't understand a medical emergency." Rounds clarified that she did not observe any injuries on defendant. Rounds asked defendant what she meant when defendant said medical emergency on the phone and asked her whether she needed an ambulance. Defendant replied "that her medical emergency was that she was going to get her medication." When she asked if defendant was injured during the accident, she responded "no" and she did not complain of any head injuries.[FN3]
Given the foregoing, County Court did not err in denying defendant's request to suppress the statements she made to Eckes-Conway, including her refusal of a blood chemical drug test. While defendant asserts that she was suffering from a head injury from the accident, she did not proffer any admissible proof to show that she had been injured during the accident. Eckes-Conway testified that defendant refused to be examined by the EMT and he had observed only a cut on her arm. Both Eckes-Conway and Rounds were also trained in sobriety testing and testified to their observations that defendant appeared impaired and made statements about taking and/or snorting her prescription Ambien [*4]after she picked it up from the pharmacy. After defendant refused to take a blood chemical drug test, Eckes-Conway also testified that he administered the required drug test refusal warnings to defendant at three different times (see People v Washington, 23 NY3d 228, 231 [2014]; People v Warren, 160 AD3d 1132, 1134-1135 [3d Dept 2018], lv denied 31 NY3d 1154 [2018]). Based on the foregoing, and with deference to County Court's credibility determinations, the court did not err in denying defendant's motion to suppress the statements as they were voluntarily made and she was appropriately apprised of the required warnings for refusing to take a blood chemical drug test (see People v Weber, 226 AD3d at 1160; People v Robinson, 156 AD3d 1123, 1131 [3d Dept 2017], lv denied 30 NY3d 1119 [2018], cert denied ___ US ___, 144 S Ct 354 [2023]). Furthermore, while defendant argues that County Court erred in crediting Eckes-Conway's testimony due to inconsistencies between his testimony at the Department of Motor Vehicles refusal hearing and the suppression hearing, we do not find that these inconsistences, which defendant explored on cross-examination, "undermine the court's credibility determination[s]" regarding his testimony (People v Shaw, 66 AD3d 1417, 1418 [4th Dept 2009], lv denied 14 NY3d 773 [2010]; see People v Williams, 118 AD3d 1429, 1429 [4th Dept 2014], lv dismissed 24 NY3d 1222 [2015]).
Defendant also contends that County Court erred in denying her a hearing on her request to withdraw her plea of guilty based upon the assertion that her plea was involuntary due to a mental health crisis as well as the court's "inappropriate" offer to modify her bail status. "Whether to permit a defendant to withdraw his or her plea of guilty is left to the sound discretion of County Court, and withdrawal will generally not be permitted absent some evidence of innocence, fraud or mistake in its inducement" (People v Walker, 173 AD3d 1561, 1562 [3d Dept 2019] [internal quotation marks and citations omitted]; see People v Bryant, 207 AD3d 886, 888 [3d Dept 2022]). "[A]n evidentiary hearing on a motion to withdraw a guilty plea is required only when the record presents a genuine issue of fact as to the voluntariness of the plea" (People v Burks, 187 AD3d 1405, 1406 [3d Dept 2020], lv denied 36 NY3d 1095 [2021]; see People v Beekman, 134 AD3d 1355, 1356 [3d Dept 2015], lv denied 27 NY3d 992 [2016]). Indeed, "[o]nly in the rare instance will a defendant be entitled to an evidentiary hearing" (People v Baret, 11 NY3d 31, 33 [2008] [internal quotation marks and citation omitted]; accord People v Beekman, 134 AD3d at 1356).
A careful review of the record demonstrates that all those present in the courtroom on the day of defendant's plea were concerned with her mental state and ensuring that her plea was entered knowingly, voluntarily and intelligently, largely due to her appearance the day before on a bench warrant where she was visibly ill. Additionally, despite defendant [*5]expressing verbally that she wanted to accept the plea offer, County Court adjourned the matter for a couple of hours to give her more time to discuss it with her attorney. When she appeared later that day with her attorney, the court underwent a lengthy colloquy wherein it repeatedly asked questions to ensure she was aware of and understanding what was occurring. Certain questions posed by defendant revealed this to be the case, including whether, without prompting from counsel, the court would permit an Alford plea, which it stated it would not. Defendant's responses were appropriate and demonstrated that she understood what was being asked of her throughout the colloquy, and, more importantly, were in stark contrast from her appearance the day before when she said nothing, was struggling to breathe and passing out. Moreover, defendant indicated that she was not under the influence of any drugs or medications; although she stated that she was stressed, she then clarified that she was thinking clearly. The court also specifically informed defendant that it would be unlikely she would be allowed to withdraw her plea and noted that on the prior day defendant seemed sickly, and she appeared to be doing better during this proceeding. Yet another indication that she was clear-headed and aware of what was occurring, while being requested to allocute to the facts of the indictment, defendant mentioned her head injury as a potential factor in her accident, and the court reminded her that if she did not wish to plead guilty, she could have a trial. Defendant ultimately admitted to being impaired by her prescription drugs while driving on the day of the accident, including her repeating that she had said she took both of her prescription medications prior to driving her vehicle on the day of the accident.
County Court did not err in declining to hold a hearing on defendant's request to withdraw her plea. The court conducted a thorough and detailed plea colloquy during which defendant confirmed her understanding of the plea agreement, the trial-related rights that she would be forfeiting by pleading guilty and the consequences of pleading guilty. Defendant also stated that she had not been forced into pleading guilty and admitted to engaging in the conduct constituting the crimes to which she pleaded guilty. As for the modification of her bail status, notably defendant had, the day before, been brought into court on a bench warrant and therefore, the court repeatedly informed defendant that a bail hearing would be scheduled if she did not wish to plead guilty. As such, her bail status "amounts to no more than the type of situational coercion faced by many defendants who are offered a plea deal and that [she] made a choice among alternative courses of action which did not render [her] plea involuntary" (People v Arlt, 219 AD3d 986, 989 [3d Dept 2023] [internal quotation marks and citations omitted], lv denied 40 NY3d 996 [2023]; see People v Drake, 224 AD3d [*6]1138, 1140 [3d Dept 2024]). Regarding her mental status, the court did not find an email from defendant's social worker regarding her provisional diagnosis of generalized anxiety disorder persuasive to change its observations and assurances of her clear mental state during the plea colloquy, which is a discretionary determination to which we accord deference (see People v Nieves, 166 AD3d 1380, 1381 [3d Dept 2018], lv denied 33 NY3d 979 [2019]). Accordingly, we do not find an abuse of discretion in County Court's denial of defendant's motion to withdraw her plea without a hearing (see People v Mills, 189 AD3d 1826, 1827-1828 [3d Dept 2020]; People v Dashnaw, 260 AD2d 658, 659-660 [3d Dept 1999], lv denied 93 NY2d 968 [1999]).
Defendant's remaining contentions do not warrant extended discussion. First, defendant's assertion regarding a Brady violation is foreclosed by her plea of guilty while her motion to dismiss regarding same was outstanding and thus did not adversely affect defendant (see CPL 470.15 [1]; People v LaFontaine, 92 NY2d 470, 474 [1998]; People v Lall, 223 AD3d 1098, 1108 [3d Dept 2024], lv denied 41 NY3d 984 [2024]). Also, defendant's argument that her counsel at the suppression hearing was ineffective for failing to subpoena a doctor who examined defendant is foreclosed by her guilty plea (see People v Montgomery, 221 AD3d 1347, 1348 [3d Dept 2023], lv denied 41 NY3d 966 [2024]; People v Wilkerson, 221 AD3d 1187, 1188 [3d Dept 2023]). To the extent that defendant is asserting that the denial of effective assistance of counsel impacted the voluntariness of her guilty plea, it is unpreserved as it was not raised in her motion to withdraw her plea (see People v Guilder, 235 AD3d 1044, 1046 [3d Dept 2025], lv denied 43 NY3d 963 [2025]; People v Soprano, 135 AD3d 1243, 1243 [3d Dept 2016], lv denied 27 NY3d 1007 [2016]). Any remaining contentions raised by defendant have been examined and found to be without merit.
Clark, J.P., Aarons, Reynolds Fitzgerald and McShan, JJ., concur.
ORDERED that the judgment is affirmed.

Footnotes

Footnote 1: A special information revealed that defendant had been convicted of driving while intoxicated offenses in 2002 and 2005 and that her license had been suspended or revoked at three different times due to her failure to answer or pay fines.

Footnote 2: In County Court's omnibus motion decision wherein the suppression hearing was granted, the court also dismissed count 2 of the indictment, as requested by defendant.

Footnote 3: After this telephone call, defendant asked to call an attorney. After inquiring as to whether she knew an attorney and the phone number, which defendant stated she did, Rounds allowed her to use her cell phone. Defendant attempted three telephone calls, presumably to an attorney, all of which were unanswered. Rounds asked if defendant then wanted to continue with the DRE evaluation, and she stated she did. At oral argument, defendant specifically abandoned any challenge to whether Rounds continuing with the DRE evaluation violated her right to counsel.